```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
Rolex Watch U.S.A., Inc.,                                   :
                            Plaintiff,                      :
                                                            :
                -v-                                         :
                                                            :
                                                            :
City Styles 313, LLC, et al.,                               :
                            Defendants.                     :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 29 2012

12 Civ. 4754 (AJN)

MEMORANDUM

ALISON J. NATHAN, District Judge:

This memorandum addresses the Court's reasons for entering a Final Judgment and Injunction by Default (Docket # 41) against Defendant Michael Anthony Leonard II ("Leonard"), awarding statutory damages of $200,000 per infringed mark, awarding attorneys' fees and costs, and entering a permanent injunction.

I.   BACKGROUND

Plaintiff, Rolex Watch U.S.A., Inc. ("Rolex"), discovered Defendants' website through Facebook in April of 2012 and purchased a Rolex watch through the site on May 17, 2012. (Berthiaume Decl. ¶ 7; Trezza Decl. ¶ 4). Plaintiff paid $250 for the watch. (Trezza Decl. ¶ 4). Soon after the watch was delivered to Plaintiff in June of 2012, Plaintiff determined that it was a counterfeit. (Crowe Decl. ¶¶ 3–6).

This action was commenced on June 18, 2012. (*See* Docket # 1). The Court entered a temporary restraining order ("TRO") on June 19, 2012. (Docket # 18). The TRO required Plaintiff to serve Defendants using traditional methods or, alternatively, to move for permission to use alternative service. (*Id.* at 8). On June 25, 2012, Plaintiff moved for alternative service,

1

informing the Court that it had not been able to locate Leonard to serve him, but that it had affixed copies of the complaint and the TRO to his actual place of business and home address and mailed copies in the manner required by N.Y. C.P.L.R. § 308(4) to both addresses. (Docket #'s 20–21). The Court then allowed Plaintiff to serve the summons and complaint on Defendants via three email addresses, including the email address that Plaintiff had previously used to communicate with Defendants when purchasing the counterfeit Rolex watch. (Docket # 23). The summons and complaint were served on Leonard by email on June 25, 2012. (Docket # 19).

Leonard did not submit a timely responsive pleading. On November 8, 2012, over three months after a responsive pleading was due, Leonard emailed an "Affidavit of Fact Notice to Dismiss from Subject Matter of Jurdiction [*sic*]," without providing any explanation for his failure to submit a timely response to the complaint. (Docket # 37).

## II. DISCUSSION

### A. The Court Does Not Accept Defendant's Untimely Submission

The standard for accepting a late pleading is the same as for vacating a default judgment. *See, e.g., Gaungzi Nanning Baiyang Food Co. Ltd. v. Long River Int'l, Inc.*, 2010 WL 1257573 (S.D.N.Y. Mar. 30, 2010). Rule 55(c) empowers a court to set aside a default judgment upon a showing of "good cause." The Second Circuit instructs that when weighing whether to vacate a default judgment, a district court should consider three factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). It is "well established that default judgments are disfavored" in the Second Circuit. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("A clear preference exists for cases to be adjudicated on the merits.").

2

As discussed below, each of the three factors identified by the Second Circuit weigh in favor of entering a default judgment.

i. Willfulness

Willfulness is "something more than mere negligence, such as egregious or deliberate conduct," though the degree of negligence may factor into the court's decision-making. *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005).

The summons that was served on Leonard stated: "[w]ithin 21 days after service of this summons on you . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12." (Docket # 19). Approximately four months later, Leonard emailed a document to the Court moving to dismiss the case. (Docket # 37). Yet Leonard has not provided the Court with any explanation for his untimely submission. The Court therefore infers that the lateness was willful. *See Schroeder v. Indorsky*, 1991 WL 1611187 (S.D.N.Y. Aug. 12, 1991) ("A default is willful where a defendant chooses to ignore a complaint and fails to respond."); *see also Marziliano v. Heckler*, 728 F.2d 151, 156 (2d. Cir. 1984) (the Secretary of Health and Human Services was found to have defaulted willfully when he had knowledge that he was required to respond and simply ignored this obligation) ("No explanation was ever offered for [the] failure to inform the court and thereby avoid defaulting. The record thus amply supported a finding that the default was willful.")

ii. The Existence of a Meritorious Defense

The Second Circuit has held that the absence of a meritorious defense is a sufficient basis to deny acceptance of a late answer. *Green*, 420 F.3d at 108. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete

3

defense." *McNulty,* 137 F.3d at 740. This standard has been applied to allow consideration of procedural defenses, such as personal jurisdiction, and not just factual defenses. *See Knox v. PLO*, 248 F.R.D. 420, 427 (S.D.N.Y. 2008).

In this case, Leonard moves to dismiss on the basis that this Court lacks subject matter jurisdiction. However, nothing in Leonard's submission is convincing regarding this assertion. The Court understands Leonard's motion as asserting that this Court lacks any authority to preside over this Lanham Act case, or to preside over any case involving Leonard. (*See* Docket # 37 at ("What you may think is law is actually public policy and I do not operate under public policy unless I formally consent.")). Such an assertion is without merit.

### iii. Prejudice

The passage of time alone is an insufficient basis for a finding of prejudice. *Badian v. Elliott,* 165 F. App'x 886, 891 (2d Cir. 2006). But "[w]hen delay creates . . . discovery difficulties or provides greater opportunity for fraud, a district court does not err in finding that prejudice warrants" denial of a late answer. *Id.*

In this case, Leonard refused to respond to Plaintiff's requests for expedited discovery, which this Court authorized as part of the TRO. (Docket # 18 at 5–6). Expedited discovery is important in counterfeiting cases because it "may very well lead to evidence of continuing infringement by this defendant or others; it may also lead to the discovery of future plans to infringe or the discovery of additional infringing merchandise." *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990). Leonard's refusal to appear in this case and resulting failure to respond to Plaintiff's requests for expedited discovery establishes prejudice that cannot be undone.

B. Statutory Damages of $200,000 Are Awarded for Each Mark

Courts determining damages pursuant to 15 U.S.C. § 1117(c)(2) have considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*See, e.g., Coach, Inc. v. Horizon Trading*, 2012 WL 5451274, at *8 (S.D.N.Y. Nov. 7, 2012) (Engelmayer, J.).

On balance, the factors weigh in Plaintiff's favor. As for the first two factors, Plaintiff presents no evidence as to how much money Defendants earned from selling counterfeit Rolex watches or how much revenue Plaintiff lost as a result. But Plaintiff is in no position to provide such a showing given that there has been no discovery. Nor have Defendants appeared in this action to assert that the infringing activity is limited or insubstantial. Indeed, this lack of cooperation weighs against Defendants on the sixth factors ("whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"). Additionally, the value of the trademark is likely to be quite high given the worldwide recognition of the Rolex brand as a high-end manufacturer of watches.

Furthermore, "the goal of deterring similar conduct by other enterprises requires a substantial award." *All–Star Marketing,* 775 F. Supp. 2d 613, 623 (S.D.N.Y. 2011). Screen shots presented to the Court show that on April 13, 2012, Defendants' website posted a message stating: "Why pay retail anymore? Fastest Growing Small Business in Metro Detroit." (Compl. Ex. 3). It is not clear to the Court whether this statement indicates the actual scope of Defendants' counterfeiting operation—in which case it is quite large—or whether it is merely

5

self-aggrandizement—in which case it indicates a willfulness on the part of Defendants to grow their counterfeiting operation. Either way, the statement suggests a need for a substantial award to deter future infringement.

The Court's conclusion is bolstered by a declaration recently submitted by Plaintiff indicating that on November 19, 2012—nearly five months after Defendants were served with notice of this case—Defendants were still selling counterfeit Rolex watches through their various websites. (Docket # 38).

Given the willful nature of this conduct and the need for deterrence, the Court concludes that an award of statutory damages of $200,000 per mark is appropriate, amounting to a total award of $1,000,000. *See Coach v. McMeins*, 2012 WL 1071269 (S.D.N.Y. Mar. 9, 2012) (Francis, M.J.).

### C. Plaintiff is Awarded Attorneys' Fees and Costs

Under the Lanham Act, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Exceptional circumstances include willful infringement, and thus a "finding of willfulness determines the right to attorneys' fees." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) (quoting *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). Because the Court has concluded that Defendants conduct was willful, an award of fees and costs is appropriate.

Plaintiffs' counsel requests $300 for the partners who worked on the case and $175 for the associates, as well as between $80 and $195 for paralegal time. These hourly rates are well within what is reasonable in this district. *Harrell v. Van Der Plas,* 08 Civ. 8252, 2009 WL 3756327, at *6 (S.D.N.Y. Nov. 9, 2009) (Lynch, J.) ($400.00 per hour reasonable for an attorney with approximately twenty years of experience in copyright and trademark cases); *Diplomatic*

*Man, Inc. v. Brown,* 05 Civ. 9069, 2007 WL 2827125, at *2 (S.D.N.Y. Sept. 28, 2007) (Rakoff, J.) ($440.00 per hour reasonable for an attorney with twenty-three years of experience in intellectual property cases and $315.00 per hour reasonable for an eighth-year associate with experience in intellectual property cases); *Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.,* 04 Civ. 5002, 2005 WL 2063819, at *4 (S.D.N.Y. Aug. 24, 2005) (Rakoff, J.) ($395.00 to $485.00 per hour reasonable for partners' work and $180.00 to $265.00 per hour reasonable for associates' work). Upon review of plaintiffs' billing records, the Court finds the time spent on each task is reasonable.

In short, the $21,874.50 requested by Plaintiff in attorneys' fees and $600 in costs is reasonable.

### D. A Permanent Injunction is Issued

"A permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and show[s] the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011). In determining the appropriateness of a permanent injunction, courts also evaluate whether: (1) the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiff for that injury; (3) the balance of hardships tips in plaintiff's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *See Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010).

As for the first factor, the Court already made a finding of irreparable harm prior to enter the preliminary injunction and the temporary restraining order. (*See* Docket # 18 at 3). The Court concludes that given Defendants' persistence in selling counterfeit items some five months

after this action was commenced, Plaintiff is likely to suffer irreparable harm in the absence of an injunction. Similarly, there are no adequate remedies at law because the permanent harm to Plaintiff's reputation cannot be adequately monetized. Furthermore, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Coach, Inc. v. O'Brien*, 2012 WL 1255276, at *17 (S.D.N.Y. April 13, 2012) (quoting *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010)) (Oetken, J.). As for the balance of harms, Plaintiff faces irreparable harm to its reputation in the absence of an injunction. By contrast, "[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (quoting *WPIX, Inc. v. ivi*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)). Thus the balance tips in Plaintiff's favor.

In short, the standard has been met for issuing the permanent injunction outlined in the Final Judgment and Injunction by Default. (Docket # 41).

## CONCLUSION

For the foregoing reasons, a default judgment has been entered against all Defendants, Plaintiff has been awarded $1,000,000 in statutory damages, $21,874.50 in fees, and $600 in costs, and a permanent injunction has been issued barring Defendants from selling counterfeit Rolex watches. The Clerk of Court is instructed to close this case.

Dated: November 29, 2012
New York, New York

_____
ALISON J. NATHAN
United States District Judge